J-A24020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HOWARD L. TRACHTMAN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JULIA TRACHTMAN, | |
| Appellee | No. 3558 EDA 2013 |

Appeal from the Order Entered November 19, 2013
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2006-06095-DI

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 30, 2014**

Howard L. Trachtman (Husband) appeals from the order, dated November 18, 2013, and entered November 19, 2013, finding Husband in contempt for his ongoing failure to comply with certain terms of the Divorce Decree that arose from the divorce proceedings between Husband and Julia Trachtman (Wife).  We affirm.

The following recitation by the trial court summarizes the pertinent facts and procedural history of this matter:

> On January 19, 2012, the final Divorce Decree was entered in this case disposing of all equitable distribution claims arising from the divorce proceedings between [Husband] and [Wife]. On August 10, 2012, pursuant to [Wife's] "Petition for Special Relief to Enforce the Divorce Decree," the court entered an Order directing [Husband] to make certain payments on account of

_____

* Retired Senior Judge assigned to the Superior Court.

alimony and equitable distribution, as well as reimbursements for [Wife's] payments of a federal tax liability, and ordering [Husband] to obtain life insurance. Specifically, the August 10, 2012 Order required [Husband] to pay [Wife] a total of $6,126 per month in alimony and support arrears through Pa.SCDU, and to pay [Wife], through her attorney's office, the separate sum of $2,365.81 [monthly] on account of equitable distribution, as ordered by the Divorce Decree. Up until June 3, 2013 (when the court's Interim Order was entered), [Husband] made average monthly payments of $7,705.00 to Pa.SCDU, and made no payments to [Wife], through her attorney's office, on account of equitable distribution.

[Wife], on March 26, 2013, filed a "Petition for Contempt of Divorce Decree and Order of August 10, 2012." Following a court proceeding on May 24, 2013, an "Interim Order" was entered on June 3, 2013, directing [Husband] to pay his monthly alimony ($5,076), support arrears ($1,050) and equitable distribution ($2,365.81) payments through the Domestic Relations Office through Pa.SCDU, for the simple and practical reason that [Husband] was only making payments through Pa.SCDU, and was not making payments as directed to [Wife] through her attorney's office. [Husband] continued to make average monthly payments of $7,705 through Pa.SCDU. [Husband] did not increase his monthly payments as directed by the June 3, 2013 Interim Order.

The undersigned heard arguments of counsel on May 24, 2013 and October 28, 2013, and conducted an evidentiary hearing on November 7, 2013. On November 18, 2013, the undersigned, found [Husband] in contempt of the Divorce Decree and the August 10, 2012 Order.

Trial Court Opinion (T.C.O.), 4/10/14, at 1-2.

The November 18, 2013 order states in its entirety the following:

AND NOW, this 18th day of November, 2013, upon consideration of the Petition for Contempt filed by [Wife] on March 26, 2013, and after the arguments of counsel heard on May 24, 2013 and October 28, 2013, and the evidentiary hearing conducted on November 7, 2013, it is hereby ORDERED and DECREED as follows:

1. [Husband] is found to be in Willful Contempt of the Divorce Decree and the Order of August 10, 2012.

2. Within fifteen (15) days of the entry or this Order, [Husband] shall pay directly to [Wife] the sum of $2,289.05, representing the balance of the reimbursement owed to [Wife] for payments she made on account of the federal tax liability against Floor Management Group, Inc. per the Divorce Decree. In the event of [Husband's] failure to comply with this provision, [Wife] is hereby authorized to enter judgment against [Husband] in the amount of said obligation, without prejudice to her right to request additional sanctions for such noncompliance upon further application to the court.

3. Within thirty (30) days of the entry of this Order, [Husband] shall pay directly to [Wife] the sum of $46,231,82, representing equitable distribution payments which have accrued since February 1, 2012 through November 30, 2013 ($2,365.81 x 22 months - $5,816,00 paid to Domestic Relations as equitable distribution from 6/1/13 - 01/13).[1] In the event of [Husband's] failure to comply with this provision, [Wife] is hereby authorized to enter judgment against [Husband] in the amount of said obligation, without prejudice to her right to request additional sanctions for such noncompliance upon further application to the court.

> [1]By our Interim Order dated June 3, 2013, [Husband] was directed to pay his monthly alimony ($5,076), arrears ($1,050) and equitable distribution ($2,365.81) payments through the Domestic Relations Office. During the months the June 3, 2013 Order was in effective [sic], [Husband] shall receive "credit" in equitable distribution in the amount of $5,816, the amount he paid in excess of the alimony and arrears obligation.

4. The Domestic Relations Office is hereby DIRECTED to add back $5,816.00 as arrears to [Husband's] support balance in the above captioned case. This amount represents the excess payments [Husband] made to the Domestic Relations Office as equitable distribution payments pursuant to the [c]ourt's Order dated June 3, 2013, through October 31, 2013.

5. Within fifteen (15) days of this Order, [Husband] shall pay to Clare L. Milliner, Esquire[,] the sum of $8,277.50 on account of attorney's fees. In the event of [Husband's] failure to comply with this provision, [Wife] is hereby authorized to enter judgment against [Husband] in the amount of said obligation, without prejudice to her right to request additional sanctions for such noncompliance upon further application to the court.

6. Within fifteen (15) days of this Order, [Husband] shall pay to [Wife] the sum of $3,090.63 on account of attorney and accounting fees expended by [Wife] to retain Eugene Steger Associates, P.C., tax counsel, to assist with the payment of federal tax liability owed by Floor Management Group, Inc. In the event of [Husband's] failure to comply with this provision, [Wife] is hereby authorized to enter judgment against [Husband] in the amount of said obligation, without prejudice to her right to request additional sanctions for such noncompliance upon further application to the court.[2]

> [2][Wife] retained Eugene Steger & Associates, P.C., to assist her with certain federal tax liabilities in her name, both personally and on behalf of Floor Management Group, Inc. She incurred a total of $6,181.25 in fees. As [Husband] is obligated to pay for the federal tax liabilities on behalf of Floor Management Group, Inc., he shall be required to pay for one-half of the fees incurred to negotiate with the IRS an installment payment plan.

7. Effective December 1, 2013, and continuing until the equitable distribution and federal tax liability obligations are satisfied, [Husband] shall make monthly payments directly to [Wife], through the office of Clare L. Milliner, Esquire, 213 E. State St., Kennett Square, PA 19348, in the amount of $3,925.81. This monthly amount is allocated as follows:

- $2,365.81 - On account of equitable distribution, in monthly installments until the balance of $239,184 is satisfied.
- $1,560.00 - On account of federal tax liabilities for payroll taxes relating to Floor Management Group, Inc. in 72 monthly installments until the balance of $118,560 is satisfied.

8. Within (30) days of the entry of this Order, [Husband] shall obtain life insurance coverage in the amount of $357,744 naming [Wife] as beneficiary. Said coverage shall remain in effect until all obligations owed to [Wife] under the Divorce Decree have been paid in full. In the event [Husband] is unable to obtain coverage in said amount, [Husband] shall obtain coverage in such amount as is available to him, naming [Wife] as sole beneficiary. If [Husband] has existing life insurance coverage, he shall immediately designate [Wife] as the sole beneficiary in the amount of $357,744 or in such amount as is available to him up to and including $357,744.

9. Until such time as [Husband] obtains the required insurance coverage, and in the event Husband is unable to obtain insurance, a judgment in the amount of $357,744 (representing $239,184 equitable distribution and $118,560 federal tax obligation) shall be entered against [Husband] in favor of [Wife]. Said judgment shall not be executed upon unless [Husband] defaults in his payments of equitable distribution pursuant to the Divorce Decree and this Order. Upon payment in full of the equitable distribution award, said judgment shall be satisfied.

10. All other terms and obligations of the Divorce Decree entered January 19, 2012 shall remain in full force and effect.

11. This Order shall supersede the Interim Order dated June 3, 2013, effective November 1, 2013.

Order, 11/18/13.

Husband filed a timely appeal from the trial court's November 18, 2013 order and lists the following eight issues in the section of his brief entitled "Statement of Question Involved."[1]

_____

[1] Although Husband's numbered argument sections in his brief do not all exactly match his listed issues, we address Husband's arguments in the order as stated in his argument section.

1.   Whether the trial court erred in holding [Husband] in indirect civil contempt in a setting where the record demonstrated a consistent history of payment?

2.   Whether the trial court erred in holding [Husband] in indirect civil contempt when the requirements of the relevant Orders entered have been changing?

3.   Whether the trial court erred in holding [Husband] in indirect civil contempt when the [c]ourt does not specify the violation that constituted the contempt?

4.   Whether the trial court erred in making a finding of contempt without conducting a hearing?

5.   Whether the trial court erred in changing the terms of the Decree in Divorce?

6.   Whether the trial court erred in not crediting [Husband] with his over payment of support towards his equitable distribution obligations?

7.   Whether the trial court erred in awarding legal fees?

8.   Whether the trial court erred in its order regarding life insurance?

Husband's brief at 6.

We begin our discussion of Husband's issues by noting that:

"When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow:  we will reverse only upon a showing the court abused its discretion."  **Harcar v. Harcar**, 982 A.2d 1230, 1234 (Pa. Super. 2009) (quoting **Hopkins v. Byes**, 954 A.2d 654, 655 (Pa. Super. 2008)). We also must consider that:

> Each court is the exclusive judge of contempts against its process.  The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute.  When reviewing an appeal from a

- 6 -

contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

*Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa. Super. 2002) (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa. Super. 2006). Additionally, "[i]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by [a] preponderance of the evidence that the defendant is in noncompliance with a court order." *Lachat v. Hinchliffe*, 769 A.2d 481, 488 (Pa. Super. 2001). However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Id.* Moreover, we recognize that:

To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006).

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013).

Husband's first argument relates to the various payments he is required to make to Wife pursuant to the divorce decree and subsequent orders. Specifically, he discusses his "long history (since 2006) of paying through the Domestic Relations Office [(DRO)]…." Husband's brief at 13. It is apparent that Husband recognizes that the various orders, issued since the time the divorce decree was entered, require him to pay those sums set forth in the decree. However, he contends that he did not know how and to whom the amounts were to be paid. His claim that the DRO continued to

"charge" his account at the pre-decree rate is misleading at best, particularly, his claim that he overpaid his support by $40,000, in light of the fact that even after the DRO reduced the amount due monthly, Husband continued to pay the pre-decree rate. The various orders issued by the court clearly stated the amount to be paid to the DRO on account of the alimony and arrears, the amount to be paid to Wife via her counsel relating to equitable distribution and the amount to be paid to Wife as reimbursement for the federal tax liability. Husband's arguments to the contrary appear to be simply an attempt to confuse this Court. Interestingly, he does not contest the amount he owes. Husband is a sophisticated businessman. As Wife points out, Husband received copies of all orders and had an attorney representing him throughout the proceedings, even those proceedings that he chose not to attend.[2] Husband has not convinced this Court that his first argument has any merit.

Next, Husband asserts that a hearing is necessary before the trial court can find him in contempt, citing ***Chrysczanavicz v. Chrysczanavicz***, 796 A.2d 366 (Pa. Super. 2002). Husband notes his prior appeal to this Court, wherein this Court reversed the trial court's finding of contempt based upon a conclusion that Wife had not offered evidence or testimony to

---

[2] Specifically, at the November 7, 2013 hearing, the court inquired of Husband's counsel, "What's preventing him from being here today?" and counsel responded, "Nothing, your Honor, that I know of." N.T., 11/7/13, at 9 (R.R. at 88a).

support her allegations of contempt. *See Trachtman v. Trachtman*, 63 A.3d 825 (Pa. Super. 2012) (unpublished memorandum). The trial court in the prior case acknowledged that whether the violation rose to the level of contempt was a close call. Interestingly, the subject of the contempt petition in the earlier appeal related to the same types of payments due Wife from Husband in this appeal.

In the present context, Husband appears to imply that no hearing was held, but then concedes that one was held on November 7, 2013, which he did not attend. Husband explains that at the hearing, his counsel suggested that Husband could testify by telephone. However, the trial court refused, citing Pa.R.C.P. 1930.3 and the Chester County Local Rule 1930.3(a), particularly noting that the local rule requires written requests in advance of the hearing. *See* N.T., 11/7/13, at 106-108. In so ruling, the court also mentioned that "nothing has prevented Mr. Trachtman from appearing personally either last week or today." *Id.* at 108. It appears that Husband may be attempting to have this Court remand for another hearing. However, his discussion regarding this issue does not make clear what relief he is requesting in light of the fact that a hearing was held, at which time Wife submitted evidence sufficient to prove contempt. Thus, we conclude that Husband's second argument is without merit.

Husband's third argument relates to the income tax liability. Husband claims that the court changed the terms of the Divorce Decree, which stated

that he was required to "reimburse Wife for any payments she [made] prospectively on account of the federal tax liability within thirty days of his receipt of documentation of such payments." Husband's brief at 16 (quoting the Divorce Decree).[3] The change about which Husband appears to now complain rests on the court's order that Husband "pay $1,560 per month to the I.R.S. based on [Wife's] counsel's oral representation that 'the I.R.S. does not put such an agreement in writing.'" *Id.* This argument is confusing at best.

In its opinion, the trial court explained:

Pursuant to the Divorce Decree, [Husband] was solely responsible to pay the federal tax liability related to Floor Management Group, Inc., and directed to reimburse Wife for any payments within thirty days of his receipt of documentation of such payments. Specifically, the August 10, 2012 Order directed [Husband] to pay [Wife] $3,289.05 as reimbursement for federal tax liability paid by [Wife]. [Husband] made a single payment of

_____

[3] The Divorce Decree states in pertinent part that:

Husband shall be solely responsible to pay the federal tax liability related to Floor Management Group, Inc. ("FMG Delaware"). To the extent that Wife made payments in excess of $5,205 toward this liability since July 15, 2006, Husband shall reimburse Wife for such payments, within thirty days of Husband's receipt of documentation of such payments. In addition, Husband shall reimburse Wife for any payments she makes prospectively on account of the federal tax liability (currently $216.15 per month), within thirty days of his receipt of documentation of such payments. Wife shall keep Husband reasonably informed of any communications she receives from the I.R.S. relating to the federal tax liability.

Divorce Decree at 2 (unnumbered).

$1,000.00 in May 2013. Therefore, the undersigned found [Husband] in Contempt of the Divorce Decree and the August 31, 2012 Order as he failed to pay $2,289.05 as reimbursement for federal tax liability to [Wife]. The November 18, 2013 Order, again, directed [Husband] to pay directly to [Wife] the sum of $2,289.05, representing the balance of the reimbursement owed to [Wife] for the payments she made on account of the federal tax liability.

T.C.O. at 2-3.

From our review, it becomes apparent that no change was made to the terms of the Divorce Decree. Rather, in an attempt to enforce the Decree, the court specified what Husband must pay to Wife, who has been and is making payments to the I.R.S. These payments were Husband's obligation pursuant to the Divorce Decree and continue to be his obligation until paid in full. The terms of the Decree were not altered, thus, Husband's third argument has no merit.

In Husband's fourth issue, he asserts that the trial court erred by not crediting overpayments of support to the DRO to his equitable distribution obligations. Again, we rely on the court's explanation in its opinion that directly addresses Husband's argument. The court stated:

Pursuant to the Divorce Decree, [Husband] was directed to pay [Wife] equitable distribution in the amount of $245,007 over a period of ten years (120 months) with interest calculated at 3% on the remaining balance. Specifically, [Husband] was to pay [Wife] $2,365.81 per month beginning February 1, 2012. This long term installment arrangement was put in place for [Husband's] benefit, to accommodate his financial inability to make a single lump sum payment to [Wife]. [Husband] has paid a mere $5,816.00 toward equitable distribution of the $52,047.82 he owed to [Wife] as of the time of the November 18, 2013 Order. [$2,365.81 x 22 months (February 1, 2012

- 11 -

through November 30, 2013)]. Therefore, [Husband] has an outstanding balance of $46,231.82 in equitable distribution payments he owes to [Wife], and thus is in contempt of the Divorce Decree.

As further explanation, [Husband] never made any direct equitable distribution payments to [Wife] or [Wife's] attorney as ordered, but rather only made alimony and support payments through Pa.SCDU in the average amount of $7,705 per month. In an attempt to encourage [Husband] to pay equitable distribution, the undersigned ordered on June 3, 2013 that [Husband] pay equitable distribution through the Domestic Relations Office, i.e. to Pa.SCDU. [Husband] continued to pay the exact same amount of $7,705 to Pa.SCDU as he had previously paid, an amount which is slightly more than his required monthly support and alimony. Therefore, during the months the June 3, 2013 Interim Order was in effect, the court has awarded [Husband] a "credit" in equitable distribution in the amount of $5,816, the amount he paid in excess of the alimony and the support arrears obligation. The fact that [Husband] voluntarily paid more to Pa.SCDU in the preceding months from February 1, 2012 through May 2013 is laudable, and has properly resulted in the payment of his alimony obligation and the reduction of his substantial support arrears obligation. However, the court has no duty to exercise its discretion to give [Husband] "credit in equitable distribution," when he chose (outside of the months of June 3, 2013 through November 30, 2013 when he was specifically directed to pay equitable distribution to Pa.SCDU) to make a payment to Pa.SCDU above his monthly obligation, and thus pay down his sizable support arrears. [Husband's] obligation in support/alimony is wholly separate from his obligation to make equitable distribution payments.

Finally, [Husband's] suggestion in his Concise Statement that he paid "more" than he was required is not only inaccurate, but also misleading. [Husband] may have paid more than his monthly support and alimony obligation to Pa.SCDU, but his overpayment in this regard did not even come close to his total equitable distribution and tax liability obligations.

T.C.O. at 3-5. Because our review reveals that the court's findings are supported by the evidence of record, we conclude that the court did not

abuse it discretion in the conclusions it reached regarding this issue. Husband was given credit for payments he made, even though the credit provided to him was not necessarily applied in the manner he wished. Thus, his fourth issue is without merit.

Next, Husband claims that "the court had no authority to award legal fees." Husband's brief at 18. Despite this contention, Husband then acknowledges that 23 Pa.C.S. § 3502(e) permits a court to award attorney's fees to enforce an equitable distribution order.[4] Specifically, Husband discusses the requirement that he pay attorney and accounting fees related to the taxes due to the I.R.S. from Floor Management Group, Inc., which the court found to be Husband's obligation. Husband refers to testimony and discussion with the court at the November 7, 2013 hearing that reveals an agreement had been reached between Wife and the I.R.S., which covers the amounts Wife is required to pay to the I.R.S. That amount includes what

_____

[4] Section 3502(e) provides in pertinent part that:

> **(e) Powers of the court.**—If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
>
> . . .
>
> (7) award counsel fees and costs;

23 Pa.C.S. § 3502(e)(7).

Wife owes for taxes she had herself incurred and taxes that were owed on behalf of Floor Management Group, Inc. *See* N.T. at 44-50. Husband suggests that Wife did not follow the directives in the Divorce Decree relating to the tax liability and, therefore, he should be relieved from the obligation to pay attorney's fees relating to Wife's agreement with the I.R.S. In other words, Husband claims that because Wife did not notify him about sums paid to the I.R.S., his obligation to indemnify her never arose and that, consequently, he should not be required to contribute to the payment for attorney and accounting fees in that regard.

Relying on the facts adduced at the hearing, the trial court explained that:

> [Wife] has incurred certain reasonable and necessary attorney and accounting fees for retaining Eugene Steger & Associates, P.C., tax counsel, to assist with the payment of federal tax liability owed by Floor Management Group, Inc. Because of [Husband's] continuing noncompliance, the court has determined that [Husband] is obligated to pay a proportionate share of these fees, as he is solely responsible to pay the federal tax liability related to Floor Management Group, Inc.

T.C.O. at 3.

Our review is guided by the following:

> Our standard of review of the award of counsel fees pursuant to the Domestic Relations Code is for an abuse of discretion. *See* ***Bowser v. Blom***, 569 Pa. 609, 807 A.2d 830, 834 (Pa. 2002). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *Id.* (citations omitted). "[R]eview of the grant of counsel fees is limited ... and we will reverse only upon

- 14 -

a showing of plain error." ***Isralsky v. Isralsk***y, 824 A.2d 1178, 1192 (Pa. Super. 2003) (citation omitted).

***Habjan***, 73 A.3d at 642 (quoting ***Kraisinger v. Kraisinger***, 34 A.3d 168, 175 (Pa. Super. 2011)).

Our review of the record, including the testimony and discussion that took place before the court at the hearing, reveals that Husband was aware of the negotiations occurring between Wife and the I.R.S. and that he knew what his responsibility was in connection with the tax liability. To now complain that he should not be required to contribute to these fees that Wife expended to negotiate a settlement with the I.R.S. is unreasonable since the settlement was to his benefit. Moreover, the trial court included a separate comment regarding attorney's fees in its opinion, stating:

> [Wife] has incurred substantial attorney's fees in an attempt to enforce the provisions of the Divorce Decree. She has had to file petitions and attend numerous hearings in order to enforce her rights established by the decree. The evidence of record supports the reasonable amount of attorney's fees awarded by the court. Frankly, the evidence of record supports a higher amount than awarded.

T.C.O. at 6. The court did not abuse its discretion in so ruling and Husband's arguments to the contrary are without merit.

Husband's final argument concerns the requirement in the Divorce Decree that he obtain life insurance to secure the payment to Wife of the

- 15 -

amount he owes her in equitable distribution.[5]  Husband contends that due to his medical history and his insufficient assets, he is unable to secure life insurance and/or a bond, and that the court's direction that a judgment be entered against him is an abuse of discretion.  The trial court discussed this issue, stating:

> The Divorce Decree requires [Husband] to secure life insurance with [Wife] as the beneficiary, and requires [Husband] to provide [Wife] with written documentation of the policy annually.  [Husband] failed to obtain said life insurance.  [Husband's] counsel stated during several hearings that [Husband] was unable to obtain life insurance due to his health yet, even though given numerous opportunities, has failed to provide the court with any documentation of his allegedly failed attempts to obtain life insurance.  In lieu of the life insurance, counsel for the parties agreed to attempt to arrange for a bond as an alternative security.  Again, [Husband's] counsel merely stated that [Husband] was unable to secure a bond, but provided the court with no documentation of [Husband's] attempt to secure a bond.
>
> The purpose of the life insurance coverage was to provide [Husband] the opportunity to make monthly equitable distribution payments to [Wife], rather than make one lump sum payment, but at the same time to protect [Wife] by ensuring she ultimately receives full payment.  The November 18, 2013

_____

[5] The Divorce Decree states:

> Husband shall be required to secure life insurance with Wife as the beneficiary in an amount equal to the equitable distribution balance he owes Wife.  The amount of life insurance in force may be reduced annually to reflect a lower balance due.  Husband shall provide written documentation of insurance to Wife annually in the form of a declaration from the life insurance company.

Divorce Decree at 2 (unnumbered).

contempt order, from which [Husband] appeals, now affords [Husband] the following options: (1) to obtain life insurance in the full amount; (2) if he cannot obtain coverage in the full amount, obtain coverage in such amount as is available to him; (3) assign any existing life insurance coverage designating [Wife] as beneficiary in the full amount, or in such amount as is available[;] and [] (4) if he is unable to obtain full insurance coverage, to permit a judgment to be entered against [Husband] in favor of [Wife]. If other options exist to protect [Wife] over the course of the next decade, neither the court, nor counsel, have been able to identify them.

T.C.O. at 5-6.

Husband appears to be arguing that the order from which he now appeals changed a prior order, namely, the Divorce Decree, and that such an action was taken by the trial court without jurisdiction in that the Divorce Decree had been entered on January 19, 2012, almost two years earlier. Husband contends that a tribunal loses jurisdiction to change an order once it becomes final, *i.e.*, thirty days after its entry, citing **Maurice A. Nernberg & Associates v. Coyne**, 920 A.2d 967, 970 n.7 (Pa. Cmwlth. 2007) (stating that a trial court must modify or rescind any previous order within thirty days after its entry).

Reliance on **Nernberg** does not provide any support for Husband's contention that the court abused its discretion by allowing a judgment to be entered against him and in favor of Wife. In **Nernberg**, the petition before the trial court did not request a modification of the trial court's previous order; rather, this Court concluded that the petition sought a new order. That is precisely what occurred here. Wife's petition was filed in an attempt

- 17 -

to enforce the Divorce Decree. She was not seeking a modification of the Decree. Moreover, the trial court's order here did not change the Decree; it was employing a method to enforce the Decree. *See* 23 Pa.C.S. § 3502(e)(1) (stating if a party fails to comply with an equitable distribution order, the court to effectuate compliance may enter judgment). Accordingly, we conclude that the court's ruling that if Husband does not secure life insurance and/or a bond, a judgment could be entered against him to protect Wife's receipt of full payment under the Divorce Decree, is not an abuse of discretion. Husband's last issue is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2014